Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Judge Legault and I are pleased to welcome our colleague from the Middle District of Alabama, Judge Keith Watkins, to assist us today and tomorrow. He's filling in for Judge Beverly Martin who would have been sitting with us, but Judge Martin, as many of you may know, has decided to retire and we wish her well and we very much appreciate Judge Watkins filling in this week to assist us with our work. Judge Watkins is a former Chief Judge of the Middle District and is now a Senior District Judge. Senior judges perform about 20 percent of the workload of the federal judiciary. We really couldn't do our work without them. They provide an invaluable service and they're a bargain. They work for free. So, thank you, Keith, for helping us this week. My pleasure. Council, we're familiar with your cases. We've read your briefs, the authority cited in your briefs, at least portions of the record, so you have limited time this morning. I apologize for the delay. We're having video difficulties with our live stream today, so we're just live streaming audio. Judge Lagoa has had a little bit of background noise, which is why she's muted now, but if she asks a question, she'll unmute or I'll have to remind her to unmute if she forgets, but that's why she's muted at this point. So, our first case this morning, by the way, pay attention to the clock. When the clock expires, it is time to wrap it up. If you're but be mindful of our time. Our first case this morning is CSX versus the United States. This is a return trip to our court. Mr. Killian, will you start, please? Yes. Good morning, your honors, and may it please the court. I'm Brian Killian on behalf of the appellants. As you noted, Judge Pryor, three years ago in the CSX1 decision, this court examined the plain language of the Railroad Retirement Tax Act and held, quote, relocation benefits and moving expenses that comport with the statutory requirements of E-I-I-I are excluded from railroad retirement tax. On remand, the district court found on the undisputed evidence that the relocation benefits at issue in this appeal do, in fact, comport with E-I-I-I's statutory requirements. Yet we're here again on appeal because the government insists that an income tax deduction rules apply on top of E-I-I-I's statutory requirements. So whether today we're going to talk... I think you might be here in part because there was some confusing language in the previous panel decision about substantiation. And so, you know, I'm wondering what you think the panel meant when it referred to substantiation in its opinion. Is it just the statute refers to the employer identifying certain reimbursements? Is that the substantiation you think that was... Hold on one moment, please stop the clock. Brian? Brian? I've stopped the clock. We had another lawyer from another case who appeared on screen for a moment. Is that rectifying? Yes, Ron, I stopped the video. Okay, thank you. All right, Mr. Killian. Sure, and I understand your Honor's question. The district court did say, interpreted CSX-1 as not foreclosing application of the accountable plan rules in this case. And when this court used the phrase substantiation in CSX-1, it was in fact referring to E-I-I-I's requirement of employers separately paying or separately identifying the amounts that are covered by E-I-I-I. Substantiation is not a term of art for when employees give receipts to their employers. Rather, substantiation is a general term that describes how private individuals document the existence of a transaction that has income tax or employment tax ramifications. And so historically, there are two methods of substantiation in a reimbursement context. The employer can substantiate by making separate payments or separately identifying as payments, or the employee can substantiate by providing the receipts to the employer for those reimbursements. So the district court- It's a strange use of the word, would you agree? Well- I mean, it seems like perhaps the better word, if you're right, is identification, the identification requirements. But when it's referred to substantiation, I don't know what substantiates it beyond just identifying. Well, you could also separately pay. So separately identify is only one half of the phrase within E-I-I-I. So even just saying an identification requirement- That doesn't substantiate it? Well, I think it does, Your Honor, in this regard. Historically, up until the accountable plan rules came out until the late 1980s, employers, in fact, substantiated their reimbursements in exactly this method. And so if the IRS had a question after the fact about whether an amount was a reimbursement or whether an amount was wages, they would go back and look at the pay stub, and that would substantiate the claim that it was, in fact, a reimbursement. And so I do think it's fair to call it substantiation in that general sense. And it is- Is the use of the word substantiation there, it's really you're proving whatever the expenses that either it qualifies or it doesn't qualify? It proves that the payment was made. Yes, Your Honor. It proves that this was done in accordance with the statutory requirements. Mr. Gillian, is anything that... I'm sorry, go ahead. Can I ask you a question? Does the mandate in CS1, does it foreclose the government's argument that Section 162A's Ordinary and Necessary Business Expense Framework should apply to the RRTA compensation as defined by 3231E1? Yes, it does, Your Honor. In CSX1, the government and CSX litigated over the scope of the statutory language, whether it included relocation benefits and moving expenses or whether it did not. The government argued it did not because the language in the statute is limited to travel expenses. We argued and the court agreed that you follow the plain language of E162A. And now the government has come back with this 162A argument, which directly contradicts the holding of this court. And I'll read it again. Statute relocation benefits and moving expenses that comport with the statutory requirements of E162A are excluded. This court did not identify Section 162A. In fact, the government didn't even identify 162A itself in the briefs really up until December of last year. But nonetheless, this court's authoritative interpretation of the words in the statute does foreclose the 162A argument that the government raises today. If the court accepted the 162A argument that the government proposes, then relocation benefits and moving expenses would never be excluded under E1iii. I'm not sure that the prior panel really decided that. I think it's clear that Judge Jordan thought that was an unpersuasive argument, but it wasn't something the panel actually decided. I'll agree, Your Honor, that the government did not identify Section 162A in its briefing to this court in the CSX1 case. But I do think that the court's authoritative interpretation of the statutory language effectively forecloses the Section 162A argument. And so the 162A argument is, if not an attack on the holding of CSX1, an attack on the reasoning and the sari decisis effect of CSX1 for two reasons. As I just tried to answer to Judge Lagoa, this court, there would be a functional incompatibility. If the 162A argument is right, CSX1 is a dead letter. And number two, this court identified all the statutory requirements when it said that CSX needs to comply with the statutory requirements of E1iii, and 162A was not one of those. But even if CSX1 didn't foreclose the 162A argument, the Supreme Court's decision in Central Illinois does also foreclose that argument. In Central Illinois, which was decided in 1978, just two years after E1iii was added into the RRTA, the government in dealing with an income tax withholding regulation that is nearly identical, it's not exactly the same, but nearly identical to the language that's in E1iii, told the Supreme Court that this language in the income tax withholding reg incorporates a 162A deductibility requirement. And the Supreme Court said no. The Supreme Court said there is not an express link between these two and that a withholding exclusion administered by employers at the time wages are paid to employees is fundamentally different from an income tax deduction that is applied by the employees months, maybe even more than a year later when the employee is doing his taxes for April 15th. And so as the Supreme Court said, required withholding is rightly much narrower than subjectability to income taxation. The government tries to argue that Central Illinois is somehow compatible with the 162A argument, but we don't see it. And we think that the plain reading of the court's decision therefore closes that argument. There is no explicit link between E1iii and 162A. When Congress wants explicitly to link one of the RRTA provisions to a different provision in the Internal Revenue Code, it does so by cross-reference. And indeed, there are several other RRTA exclusions that specifically cross-reference other provisions in the Internal Revenue Code in order to synchronize one exclusion in the RRTA with an exclusion somewhere else in the code. E1iii, however, is entirely self-contained. As this court, I think, held in CSX-1, its provisions are clear and complete. There is no reason to look into the income tax provisions of the Internal Revenue Code in order to understand what E1iii encompasses. Nor is there an implicit link, as the government suggests, because the wording here is not identical. Really, if the court were to apply this, it'd be through the impari materia canon, where courts will construe two identically worded statutes, similarly, if their purposes are similar. But here, the wording is not identical. And as the Supreme Court said in Central Illinois, the purposes are not similar either. They're not harmonious because one is an exclusion administered by employers and the other is a deduction administered by the employer. One is statutory and the other is regulatory, too. That's an odd way of to take the government's argument, transplanting old soil. Exactly. Exactly. When Congress wrote E1iii, it tailored it to the railroads. It did not simply lift even the FICA language that it had said that it liked the style of the old FICA exclusion. It added an express reference to allowances because railroads historically have provided railroad employees with all manner of allowances. And the IRS's revenue ruling that precipitated the enactment of E1iii was a direct threat to the railroad's provision of allowances. The government also, excuse me, the United States Congress also changed the adjectives that limit or apply to the types of business expenses that E1iii covers. And so even if there were some ancient connection, as the government surmises, you know, that the DNA of E1iii is inherited from 162A, over time and by Congress's direct writing of E1iii, it's severed that link between the two. The government's argument... Yes, sir. Mr. Killian, I have a more fundamental question about the interplay between audit procedures and substantiation. Does it matter what type of... Does anything here preclude the IRS from auditing any tax situation, no matter what the substantiation, what substantiation applies? What's the interplay as a practical matter between substantiation and audit? Is there any presence of the IRS here? No. When the IRS wants to check later on to see whether CSX and its employees properly withheld the RRTA tax, it has the full power of its auditing powers to request documents and to ensure that the E1iii statutory requirements were satisfied at the time the payment was made. The audit does not allow the IRS to impose additional requirements or to change the type of substantiation that E1iii itself prescribes, but yes, the IRS... The problem here is that these amounts weren't withheld and your client sought a refund. They were withheld, yeah, and we did seek the refund. Yeah, exactly, right. You did not exempt them from withholding and then realized that you thought you should have and then you sought a refund, right? That's correct. That's correct. Although I point out that the CSX, there are more than just one tax year at issue here. While this case involves only 2009, CSX has been providing relocation benefits to its employees for the greater part of the last decade. And if I may finish answering this question, there are 10 more years approximately worth of cases that are being held up in an audit right now. Okay. Any other questions from my colleagues? Okay. Mr. Pollack. I was going to please the court, Nathaniel Pollack representing the United States. I'd like to start with the mandate issue. And the mandate in CSX1 does not foreclose the government's argument. And the basic reason for that is that this court certainly... I think your problem is the text, not the mandate. Okay. Well, then I can move directly to that, Your Honor. The reason that the text of E1iii and section 162a should be read to the public is because there's no good reason really to interpret expenses incurred in the business of one's employer, which is E1iii, to be a dramatically broader category than expenses incurred in carrying on one's employer's business. And there's very good reasons when you look at the history of E1iii to interpret those statutes congruously. And the biggest reason is a reason really CSX identified in its opening brief, that Congress was responding in enacting E1iii to an IRS revenue ruling. The IRS revenue ruling Congress was responding to interpreted the withholding regulation and the prior RRTA regulation differently when it comes to substantiation. It required different substantiation standards for the two regulations, but it interpreted those regulations the same when it comes to the coverage of the business expense carve out from wages in the case of withholding or compensation in the case of the RRTA. And the revenue ruling interpreted both the prior RRTA regulation and the withholding regulation to correspond to section 162a. So we submit that it would be odd to understate it for Congress to adopt in essence the withholding regulation language in enacting E1iii to bring the RRTA into alignment with the withholding rules and also FICA. And then have that same which means something completely different when it became a statute. It's not the same language. It's true that the word ordinary is dropped and the word allowances is added. But I would point out your honor that with Congress, the revenue ruling was looking at two regulations. And if you look at the old RRTA regulation, what you'll see is that it contains none of the adjectives, not bona fide, not ordinary, not necessary. The language of that old RRTA regulation is just incurred or reasonably expected to be incurred in the business of the employer. So you had different regulatory language, although I would say But doesn't the omission of the word ordinary, which you concede in an E1iii indicate that the two statutes have different meanings? I mean, aren't you asking us to ignore the plain text? Your honor, I'm not asking you to ignore the plain text. I think it's true that the words are different, but in terms of the coverage of what they, at least fundamentally Doesn't the omission of the word ordinary, doesn't it imply then that business expenses have, they constitute different purposes under the two different statutes? Well, your honor, I mean, I think that you would have to conclude that there's a material distinction that Congress meant by dropping the word ordinary to very significantly expand the coverage. And I think if you look at the history of what Congress was doing, how it was reacting to this revenue ruling, in combination with the fact that there's absolutely nothing about this in the legislative history, if you look at legislative history. And also, I think if you look at Wisconsin Central and Luce together, I think what you have is sort of a different in parametia principle in this context where, yes, certainly under Wisconsin Central, differences in language that are material require different interpretations of the statute. But Aren't you asking us really to, I mean, I know you're saying something, I think you're saying something different, but aren't you really asking us to expand the use of bona fide and necessary business expense based on language and case law that goes outside the RRTA, when in fact the RRTA really is this separate mechanism that is very narrow and it's very tailored to the railroad industry, which is different than any other industry? Your Honor, it's certainly true that the RRTA is not always interpreted exactly the same as the other employment tax statutes. I'm not trying to argue against the principle of Wisconsin Central at all. But what I am saying is it's, I think you need to look at, you know, here's the sort of historical framework that would be true if Mr. Killian's argument is correct. It's been the case all along since 1930-something that the RRTA regulation that carves out business expenses was interpreted as it was interpreted in the 1975 revenue ruling to correspond or at least basically correspond to section 162. Then you have, you know, the Congress, you know, obviously by statute, but you know, superseding that regulation, changing it to different regulation that's modeled after the FICA and withholding language and making a very minor change, dropping one word and adding another and saying nothing about that. And then Mr. Killian wants this court to say nothing about silence. I mean, not explaining, not stating, at least in the legislative history or anywhere else. They don't have to explain anything in the legislative history. They don't vote on legislative history. Members of Congress rarely even read it. But I mean, all they have to, the thing they voted on was the statute. We have the words of this statute. Your Honor, and I'm not, I don't think the government's argument depends on legislative history, but all I'm saying is if you look at it. Your argument very much depends on legislative history. It does not, because it, because it certainly relies on an unstated legislative purpose. It relies, we agree with CSX that Congress was responding to this revenue ruling. And I think that's clear. And what I think that the issue is, is you have an existing carve-out from compensation for business expenses. And then that carve-out is superseded, that regular carve-out is superseded by statute. But the statute does not on its face expand the coverage of that carve-out. And, and, you know, and I would, I would point out to Your Honor that, I mean, in CSX one, this, this court says, you know, expressly that, that its decision does not mean that the railroad can exclude from compensation anything it deems necessary for its business. But there, there really is no limiting principle in CSX's argument. That, you know, and, and even if you, you looked, if you were obligated. What kind of moving expenses do you think would be included under your interpretation? Well, the, the category of, I mean, certainly, you know, deductible moving expenses are excludable under a different provision. So what we're really talking about here. I'm talking about E1, little, little I, I, I. So because deductible moving expenses are already excluded under E5, what we're talking about here is relocation benefits. And that's not a statutory category. That's just a descriptive term. And so anything that's a benefit of relocating can, can be understood as a relocation benefit. We gave an example of the employee that transitions from a, a situation where they're working in, in an office to a situation where they're working principally from home and. What moving expenses are included in your interpretation? Relocation benefits, I think are, are included. The moving expenses that are included, are excluded from compensation are the moving expenses that are deductible under section 217 of the tax code and therefore excluded under section E5. Can you answer the question, which is what does that entail? Can you give me specifics, please? Oh, certainly. Yes. So under E5, the moving expenses that are excluded would be all of the direct moving expenses. So the cost of actually transporting employees, goods, household items from the old residence to the new residence, and also the cost of the employees and the employee's family traveling from the old residence to the new residence, which can include, you know, overnight stays, et cetera. So those are the, those are the, the tax deductible moving expenses that are deductible under section 217. And those expenses are deductible from the income tax if the employer incurs it. But if the employer provides it and pays for it and does not, and exempts that from withholding. That's appropriate. And CSX did that, and the United States doesn't exempt them. They did that. We don't, we don't dispute that. You think that the court, what we have to do is come up with a substantiation requirement from a regulation that's never been written and not give CSX a refund for that amount. Sorry, Your Honor, I think there's some confusion. Respectfully, the issue of the tax deductible moving expenses that were also, those were also excluded from the RRTA compensation under a different provision. And there's no dispute that those were appropriately excluded by CSX. CSX excluded from withholding, from, from compensation, RRTA compensation, the tax deductible moving expenses of its employees. And the government does not dispute that. The question is whether additional non-deductible relocation benefits are also excludable under E-III. And I do want to make one response to this. If those are excludable, what would otherwise be deductible expenses if the employee had incurred them? Then what, under the language of the statute, does not allow the railroad to exclude these others as well? The, the, not... So long as they've been separately identified. Relocation benefits that are not deductible under any provision of the, of the internal revenue. What in the statute requires that it be deductible? It doesn't, the statute doesn't require that, but, but our position, Your Honor, is that the, the incurred in the business of the employer has, taps into regulatory language that has always been read in accordance with, with section 162. But I would submit, Your Honor, if you just look at the statute... There's no decision that says that, that Congress transported or transplanted some right language from a regulation into a statute and that, that's how we should interpret it. Your Honor, I mean, I think that the, the sort of... Especially when the language is a little different. I think, I think that the old soil sort of principle is not, is, is not limited to statutes in the sense that if it's regulatory language... Is that your way of saying that the old soil principle has never been applied from the transplanting of regulatory language to a statute so far as you can go? I don't, I don't have a case at my fingertips on that, Your Honor. But I would just finish by saying, suppose this court doesn't agree with, with looking at the history of the statute at all. It just looks at the, the language of section E-1-3 and it looks at the words incurred in the business of the employer. I would submit that a plain language reading of incurred in the business of the employer is in fact actually narrower than section 162-A. And the reason for that is in the business of the employer suggests that it's actually gotta be something that you're doing in furtherance of the employer's business. So something like, you know, creating, you know, paying an employer shipping costs out of pocket and being reimbursed. That would clearly be in the business of the employer. But, you know, one's meal expenses, those are deductible under 162-A under certain circumstances. But it's not clear to me that if you just, you know, wash everything away and look at the text of the statute, that meal expenses would really be understood to be in the business of the employer. And so I would submit that this broad but-for causation argument that CSX uses, that anything that, any expense that is incurred that wouldn't have been incurred but for my employment, that's an extremely broad standard that I don't think is suggested by the plain language of the statute in the business of the employer. And so I guess, I suppose I will just respectfully ask this court not to become the first court to interpret this 1976 statute modeled on regulatory language that goes all the way back to the 1940s to cover a broad array of non-deductible relocation benefits. Okay, Mr. Pollack, we have your argument. Mr. Killian, you've saved three minutes. Thank you, Your Honor. I'll start where Mr. Pollack ended. I think any trier fact can reasonably distinguish between a move that was done for personal reasons and a move that was done because the employer said, I want you to move so you can keep your job. This is not sort of an unlimited interpretation of E-I-I-I. Mr. Pollack and Judge Lagoa talked about some of the language differences between E-I-I-I and 162A. I also would point out that E-I-I-I is not limited to expenses incurred in the business of the employer, but also covers expenses reasonably expected to be incurred in the business of the employer. 162A requires that it actually be incurred. E-I-I-I has a prospective looking effect as well. And so it makes sense that they're different. Mr. Pollack said that the link between these exclusions and 162A goes back to the 1930s. But the only thing he cited for that in his brief and today is the revenue ruling that the IRS issued in 1974-5 that precipitated E-I-I-I to overturn it. While that revenue ruling did talk about deductibility principles, two years later, the Supreme Court in Central Illinois reversed that. It was the same principle in that 1974-75 revenue ruling that Central Illinois, the Supreme Court reversed in 1978. So that link really wasn't there, notwithstanding what the revenue ruling says. Mr. Pollack asks whether there's a limiting principle to our interpretation of E-I-I-I. Yes, you apply the plain text. And as the district court found on remand, for example, the home sale bonuses that CSX provided to its employees were not reimbursements, advances, and allowances. We failed the form requirement for those types of payments. So this is not some sort of open-ended exclusion that a company like CSX can use for anything it wants, as Mr. Pollack threatens. This court asked Mr. Pollack to identify an example of a true moving expense that would fit within his interpretation of E-I-I-I, and he was able to identify none. And the reason that is, as we explained in our reply brief, and Mr. Pollack again avoided mentioning today, is that since 1970, the IRS has had a regulation that says you may not use 162A for moving expenses. It's not that the language of 162A is somehow incompatible with using it for business-required moving expenses. It says because the IRS, by sheer force of will, has forbidden individuals and employers from using 162A for moving expenses. And that's ultimately what this argument is all about. The IRS is trying to do bootstrapping. It has this regulation that carves moving expenses out of 162A, and by hocus pocus, wants that regulation to carve moving expenses out of E-I-I-I. But as the Supreme Court noted in Wisconsin Central, the Railroad Retirement Tax Act is unique. And when it has unique language as E-I-I-I is, it, quote, requires respect, not disregard. The IRS could not adopt a regulation that carves moving expenses directly out of E-I-I-I. The court should not let them accomplish that indirectly by this 162A deductibility requirement. Thank you, Your Honors. Thank you, Mr. Gillian. We have your case, and we'll move to the second case.